**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| ARGENIS ERCIDES BRUZÓN-VELÁZQUEZ,<br><br>    **Petitioner,**<br><br>          **v.**<br><br>UNITED STATES OF AMERICA,<br><br>    **Respondent.** | **Civil No.** 23-1038 (FAB)<br>related to<br>**Criminal No.** 17-442 (FAB) |

**OPINION AND ORDER**

**BESOSA, Senior District Judge.**

Before the Court is Argenis Ercides Bruzón-Velázquez's ("Petitioner" or "Bruzón-Velázquez's") *pro se* motion to vacate, set aside, or correct his sentence in Criminal Case No. 17-442, pursuant to Title 28, United Sates Code, section 2255 ("section 2255"), (Civil Docket No. 1), petitioner's Amendment to his 2255 Petition (Civil Docket No. 3), the Government's Response (Civil Docket No. 15), and Bruzón-Velázquez's Reply to the Government's Response (Civil Docket No. 18.)  For the reasons set forth below, the Court **DENIES** petitioner's motion to vacate his sentence. (Civil Docket No. 1.)  Petitioner's request for an evidentiary hearing (Civil Docket 1-1) is also **DENIED.**

Civil No. 23-1038 (FAB)                                                    2

## I.   BACKGROUND[1]

In the spring and summer of 2017, Bruzón-Velázquez participated in a crime spree.  (Criminal No. 17-632, Docket No. 93 (PSR for 17-632 and 17-442 at 5-9.)  In April 2017, Bruzón-Velázquez, along with three cohorts, (two females and another male) committed a carjacking and kidnapping which resulted in the death of a victim.  Id.  It all started because the group was strapped for cash and discussed committing a robbery.  Id.  At the suggestion of one of the females of the group, they drove a Dodge Caliber car to a touristy area of San Juan.  Id.  Upon arriving at a bar, the two females of the group spoke to several men.  Id. Eventually, David Dubique left the bar accompanied by one of the females and walked towards his vehicle, a Ford Transit Van.  Id. Bruzón-Velázquez followed them, and together with a man known as Cachete, forced Dubique into his own Ford Transit vehicle at gunpoint.  Id.  Bruzón-Velázquez drove Dubique's vehicle to a desolate, wooded area in Aguas Buenas.  Id.  There, Bruzón-Velázquez forced Dubique out of the car, made him lie face down, and shot him multiple times in the head in cold blood.  Id.

---

[1] The Court will use the facts as summarized by the Government in its response (Civil Docket No. 15) because it accurately reflects the criminal docket in 17-442 (FAB).  Unless otherwise noted references to criminal docket documents refer to criminal case 17-442 (FAB).

After killing Dubique, Bruzón-Velázquez and Cachete left the scene in the Ford Transit van.  The rest of the group followed in the Dodge Caliber car.  Id.  A short distance from the murder scene, Bruzón-Velázquez stopped.  Id.  Bruzón-Velázquez and Cachete searched the Ford Transit van, while one of the ladies wiped down its front passenger door.  Id.  When they left the area, Bruzón-Velázquez asked the group "Did you see how the guy stayed there; I opened his brain."[2]  Id. at 7.

Less than two months later in Caguas, Bruzón-Velázquez, accompanied by another person, went to a local grocery store at 10:00 p.m.  Id. at 9.  The store had already closed.  Id.  The owner, his father, an employee, and a customer were all getting into their cars to leave.  Id.  Something did not seem right, and the customer told the owner that there were two men talking to his father while he was in his Mercedes Benz.  Id.  The men struck the owner's father in the mouth with the stock of a rifle.  Id.  The owner of the store was armed and ran to help his father.  Id.  As he ran towards his father, Bruzón-Velázquez fired a rifle at him. Id.  As a sport shooter himself, the owner knew the shots came from a long weapon.  Id.  The owner was instantly injured by bullet

---

[2] This macabre gloating statement made by Bruzón-Velázquez was highlighted by the First Circuit Court of Appeals in its opinion and order affirming petitioner's conviction and life sentence.  United States v. Bruzón-Velázquez, 49 F. 4th 23 (1st Cir. 2022).

fragments.  Id.  Bruzón-Velázquez and his cohort then fled the scene, and the victims were taken to the hospital.  Id.

### Criminal proceedings

Based on this conduct, a grand jury charged Bruzón-Velázquez in two separate indictments.  In criminal case 17-422, a grand jury charged Bruzón-Velázquez and three co-defendants for the events that occurred in April 2017.  (Criminal Docket No. 17.) Bruzón-Velázquez was charged with five offenses:  (1) carjacking resulting in death, (2) kidnapping resulting in death, (3) discharge of a firearm during and in relation to a crime of violence resulting in death, (4) discharge of a firearm during and in relation to a crime of violence, and (5) possession of a machinegun.  Id.  Five months later, the grand jury charged Bruzón-Velázquez with attempted carjacking and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence for the events that occurred in June 2017. (Criminal Case No. 17-632, Docket No. 1.)

After both cases were transferred to the docket of the same judge, the Court set a scheduling conference or change of plea hearing for January 2020 for the carjacking murder case.  (Criminal Docket No. 197.)  If Bruzón-Velázquez elected to proceed to trial, the Court scheduled the trial five days after the pretrial conference.  Id.  In anticipation of the pretrial conference, the

government filed a motion requesting Bruzón-Velázquez's presence at the conference. (Criminal Docket No. 210.) The government indicated that it sent a new consolidated plea offer on January 9, 2020, which would dispose of both criminal cases. Id. Because Bruzón-Velázquez was facing multiple, consecutive life sentences if convicted at trial, the government requested Bruzón-Velázquez's presence to ensure he had been fully advised of the final offer. Id. The government explained that Bruzón-Velázquez's presence at the pretrial conference would diminish the risk of a frivolous collateral attack if he proceeded to trial and was found guilty. Id. The Court granted the government's request that Bruzón-Velázquez be present at the pretrial hearing and indicated that if Bruzón-Velázquez decided to change his plea, the pretrial conference could be converted into a change of plea hearing. (Criminal Docket No. 216.)

As scheduled, the Court called Bruzón-Velázquez's case on January 16, 2020 as a pretrial or change of plea hearing. (Criminal Docket No. 269.) After the case was called, counsel for Bruzón-Velázquez requested additional time to discuss the new plea offer and review new evidence. Id. at 2. The Court granted the request. Id. at 15. An hour later, the parties were back on the record. Id. Counsel advised the Court that Bruzón-Velázquez would plead guilty but first wanted to call his mother. Id. at 3. When

Civil No. 23-1038 (FAB)                                                      6

the Court inquired whether Bruzón-Velázquez would be pleading that very day, counsel explained that a small recess until after lunch would provide enough time for Bruzón-Velázquez to talk to his mother. Id. at 4. The government explained it did not have a problem waiting, and counsel for Bruzón-Velázquez suggested they proceed that day. Id. The Court recessed until 1:30 p.m. Id. at 6.

After the break, counsel explained that Bruzón-Velázquez was ready to plead. (Criminal Docket No. 269 at 7.) The clerk placed Bruzón-Velázquez under oath, and the Court explained that it was going to ask him questions to ensure his plea was voluntary. Id. Bruzón-Velázquez acknowledged he was in Court that afternoon because he wanted to "sign the plea" and plead "guilty." Id. at 9. During the colloquy with the Court, Bruzón-Velázquez acknowledged that he had fully discussed all the charges in both indictments, the plea agreement and his decision to plead guilty with his attorney. Id. at 9-10, 16-17. When the Court advised Bruzón-Velázquez of his right to maintain his plea of not guilty, Bruzón-Velázquez unequivocally stated, "No, I am going to plead guilty now." Id. at 10-11.

After the trial rights Bruzón-Velázquez was waiving by pleading guilty were discussed, the government outlined the terms of the plea agreement. Id. at 12-17. Specifically, Bruzón-

Civil No. 23-1038 (FAB)                                                              7

Velázquez agreed to plead guilty to discharging a firearm during and in relation to a crime of violence resulting in death for the April 2017 conduct (No. 17-442), and to attempted carjacking for the June 2017 conduct.  Id. at 14.  The plea agreement contained a proposed guideline calculation and sentencing recommendation. For the firearm count, Bruzón-Velázquez could request a sentence of 292 months, while the government could request a sentence of up to 356 months.  Id. at 15.  Both parties agreed to recommend a sentence of 68 months for the attempted carjacking, to be served consecutively to the firearm sentence.  Id.  The plea agreement also contained a waiver of appeal provision by which Bruzón-Velázquez agreed to waive his right to appeal his sentence if the district court sentenced him to a total term of 433 months or less. Id. at 16.  The plea agreement also contained a provision that Bruzón-Velázquez was pleading guilty "freely and voluntarily because he is guilty."  (Criminal Docket No. 232 at 8.)

After reviewing the plea agreement, the Court asked Bruzón-Velázquez whether he was forced in any way to sign the agreement. (Criminal Docket No. 269 at 18.)  Bruzón-Velázquez stated that he had not been forced.  Id.  Bruzón-Velázquez also stated that he was pleading guilty of his own free will because he was guilty. Id.  After the government set forth the facts it would have proven had the case proceeded to trial, Bruzón-Velázquez accepted those

Civil No. 23-1038 (FAB)                                                    8

facts, and stated he still wanted to plead guilty.  Id. at 26.

Prior to concluding the hearing, counsel for Bruzón-Velázquez

explained to the Court that Bruzón-Velázquez was able to talk to

his family members prior to the change of plea hearing.  Id. at 28.

Over two weeks later, on February 3, 2020, counsel filed a

motion requesting leave to withdraw from the case.   (Criminal

Docket No. 239.)  Counsel explained that she had received a message

from Bruzón-Velázquez's girlfriend indicating that he did not

agree with the plea agreement.  Id.  This occurred after counsel

had been present, as requested by Bruzón-Velázquez, during the

interview with the probation officer in preparation of the

Presentence Investigation Report (PSR).  Id.  Bruzón-Velázquez had

refused to meet with counsel when she went for a legal visit the

day before Bruzón-Velázquez's sister's call.  Id.  The Court denied

the request.  (Criminal Docket No. 240.)  The Court observed that

"[c]ounsel was present at defendant Bruzón-Velázquez's change of

plea hearing and during his interview with the probation officer"

and that it was now "too late" to withdraw his plea.  Id.

The Probation Officer (USPO) notified a first PSR on March 25,

2020.  (Criminal Nos. 17-442 and 17-632, Docket No. 66.)  The PSR

calculated a total offense level of 40 which, combined with a

criminal history category of II, corresponded to a guideline range

of 324-405 months.  Id. at 18.  The PSR also indicated that the

term of imprisonment for the attempted carjacking had to be imposed consecutively to the firearm count.  Id.  The PSR documented that during his interview with the USPO in the presence of counsel that previous January 22, 2020, Bruzón-Velázquez had accepted responsibility for his actions as described in the plea agreement's version of facts.  Id. at 11.

Thereafter, on May 16, 2020, counsel filed a motion requesting to withdraw Bruzón-Velázquez's guilty plea.  (Criminal Docket No. 256.)  At the outset, the motion indicated that Bruzón-Velázquez had requested counsel file the motion.  Id. at 1. Bruzón-Velázquez's motion stated that it had always been his intention to proceed with trial and outlined all the steps counsel had taken in preparation for trial.  Id. at 1-2.  Notwithstanding, Bruzón-Velázquez stated he was "surprised and then pressured into entering a plea of guilty."  Id. at 2.  Bruzón-Velázquez explained that he did not want to make a hasty decision and that speaking with his family confused him.  Id.  He claimed that he immediately regretted his decision to plea and had refused to see his attorney when she went to visit him.  Id. at 2-3.  Due to the lockdowns associated with the Covid-19 pandemic, counsel was unable to speak to Bruzón-Velázquez until April 28, 2020.  Id. at 3.  Bruzón-Velázquez argued that his guilty plea was not a knowing and voluntary decision because he had acted under pressure, coercion,

Civil No. 23-1038 (FAB)                                          10

stress, confusion, and was not given adequate time to think.  Id. at 4-5.  Bruzón-Velázquez requested that the Court "hold a hearing to allow him to further assert his reasons, facts and his claim of actual innocence to sustain the request to withdraw his guilty pleas."  Id. at 4.

The government opposed, explaining that Bruzón-Velázquez failed to establish a fair and just reason for withdrawing his plea.  (Criminal Docket No. 258.)  For starters, the government argued that the plea had been knowing, intelligent and voluntary. Id.  The government also indicated that five months had elapsed between the change of plea hearing and the filing of his motion. Id.  Lastly, the government also noted that Bruzón-Velázquez made no claim of actual innocence, and outlined the prejudice it would face if the case proceeded to trial.  Id.

Two months later, the Court denied Bruzón-Velázquez's request to withdraw his plea, explaining that he had failed to provide a fair and just reason.  (Criminal Case No. 17-442, Docket No. 273; Criminal Case No. 17-632, Docket No. 72.)  After indicating that the Court had recessed twice to ensure that Bruzón-Velázquez had adequate time to make his decision, the Court explained that Bruzón-Velázquez's answers during the change of plea hearing established that his guilty plea was knowing, voluntary, and intelligent.   Id.   The Court also determined that Bruzón-

Velázquez's mere assertion that he was innocent, without more, did not weigh in favor of withdrawing his plea. Id. Lastly, the Court indicated that timing alone was not enough to warrant withdrawal of the plea. Id.

Unsatisfied with the Court's ruling, Bruzón-Velázquez filed a supplemental motion seeking reconsideration of the Court's denial of his request to withdraw his guilty plea. (Criminal Docket No. 266.)  Among the facts included in support of his supplemental request was that it was Bruzón-Velázquez's best recollection that he requested additional time to consider the plea and evidence, but that the Court denied his request "as the case had to be resolved that day." Id. at 2.  Bruzón-Velázquez argued that the denial of the continuance placed undue pressure on him. Id. Bruzón-Velázquez requested a transcript of the change of plea hearing, and that the Court order the government to produce the recording of the day of the change of plea hearing "as new evidence." Id. at 3.  The Court denied Bruzón-Velázquez's request for reconsideration. (Criminal Docket No. 277.)  Transcripts were produced, nonetheless.

After the Court denied his motion to withdraw his plea, Bruzón-Velázquez objected to the PSR and filed a sentencing memorandum. (Criminal Docket No. 318.)  Bruzón-Velázquez objected to the offense conduct in the PSR, explaining that his plea was

Civil No. 23-1038 (FAB)                                                    12

the product of duress.  Id.  Bruzón-Velázquez reiterated his request to withdraw his plea and to proceed to trial.  Id.  In the alternative, he requested that the Court impose a 292-month sentence in accordance with the plea agreement.  Id.

 Two days later, the probation officer filed an amended PSR and an *addendum*.  (Criminal Docket Nos. 322, 323.)  The amended PSR referenced Bruzón-Velázquez's objections to the PSR and his claim that he had entered his guilty plea under duress.  (Criminal Docket No. 323.)  Specifically, as indicated in the *addendum*, Bruzón-Velázquez alleged "he was coerced in pleading guilty to a murder he did not commit."  Id. at 2.  The probation officer determined that Bruzón-Velázquez did not clearly accept responsibility for his actions and removed the three-point reduction for acceptance of responsibility in the guideline calculation.  (Criminal Docket No. 322 at 11.)  Without the reduction, Bruzón-Velázquez's total offense level became 43, which corresponded to a guideline sentence of life imprisonment.  Id. at 13.  The PSR also contained a victim impact statement from Dubique's mother whose "heart is forever destroyed."  (Criminal Docket No. 322 at 10-11.)

 At the sentencing hearing on June 30, 2021, Bruzón-Velázquez renewed his request to withdraw his plea.  (Criminal Docket No. 342.)  Counsel explained that Bruzón-Velázquez had "requested

[her] to ask the Court to allow him to see his case at trial." Id. at 4.  As the basis for his request, Bruzón-Velázquez stated that he had been upset on the day he changed his plea.  Id.  He also claimed that he had not killed anyone.  Id. at 6.  Counsel explained that "he will appeal, and he cannot have it both ways. He cannot appeal and say I am not guilty of having killed someone and at the same time saying I did all of this."  Id.  The Court referenced the transcript of the change of plea hearing.  Id. at 6-10, and noted that at the hearing, counsel for Bruzón-Velázquez requested additional time to discuss the final plea offer and new evidence, which it granted.  Id. at 7.  After the recess, Bruzón-Velázquez indicated that he was going to plead guilty but first wanted to speak with his mother.  Id. at 7-9.  After a second recess, counsel stated that Bruzón-Velázquez was ready for the change of plea hearing.  Id. at 10.  After clarifying that the Court had provided Bruzón-Velázquez with all the time he requested on the day of his change of plea hearing, the Court again denied his request to withdraw his plea.  Id.

    The probation officer explained that it had amended the PSR to remove the reduction for acceptance of responsibility because Bruzón-Velázquez moved to withdraw his plea and had "not really accept[ed] responsibility for his actions."  Id. at 11.  The Court interjected:  "Well, he just said it.  Ms. Lizarríbar just said

Civil No. 23-1038 (FAB)                                              14

that Mr. Bruzón said that he didn't kill anyone." Id. at 11. Counsel for Bruzón-Velázquez explained that she had met with Bruzón-Velázquez and had explained the changes in the PSR to him. Id. Bruzón-Velázquez remained firm in his desire to withdraw his plea and proceed to trial. Id.

As a mitigation argument, Bruzón-Velázquez indicated that he had been exposed to drugs, weapons, and violence from a young age. (Criminal Docket No. 342 at 12-13.) Lacking a paternal figure and guidance, Bruzón-Velázquez dropped out of school after the eighth grade. Id. at 13. He claimed that he never had any opportunity to develop skills and was a product of his environment that had abandoned him. Id. In addition to placing blame on himself for his circumstances and life choices, Bruzón-Velázquez also stated that "his family is to blame, the system is to blame, [the] Education Department is to blame, because no one has really cared about him." Id. Despite this, Bruzón-Velázquez indicated that with proper skills and guidance, he could be a productive member of society. Id. Although his advisory guideline sentence was life imprisonment, Bruzón-Velázquez asked the Court to adopt the sentencing recommendation in the plea agreement. Id. at 13-14.

For its part, the government recommended that the Court impose a total sentence of 433 months, as set forth in the plea agreement. Id. at 14. Members of the Dubique family then addressed the Court.

Id. 14-17.   The victim's sister requested that the Court "apply the full extent of the law."   Id. at 16.   She also pushed back on Bruzón-Velázquez's argument that the Department of Education had abandoned him.   Id.   As a public-school teacher, she explained that a school "will do anything that it can to make sure [a student that dropped out] finishes and becomes an example for Puerto Rico." Id.   Dubique's brother also begged the Court to "apply the full extent of the law" when considering "this coldblooded killer." Id. at 17.   Bruzón-Velázquez's allocution was limited to his request to proceed to trial.   Id. at 18.

The Court calculated the advisory guideline range as set forth in the amended PSR.   Id. at 18-20.   After grouping both counts, the Court determined the total offense level to be 43.   Id. at 20. Based on a total offense level of 43 and a criminal history category of II, the Court determined Bruzón-Velázquez's advisory guideline range for case 17-422 was life imprisonment.   Id.   The Court also noted there was a maximum term of imprisonment of 15 years for the attempted carjacking in 17-632.   Id. at 20-21.

The Court began its sentencing analysis by explaining that it had considered the parties' sentencing recommendations, the victim impact statements, and Bruzón-Velázquez's short allocution.   Id. at 21.   Turning to the sentencing factors, the Court noted that Bruzón-Velázquez was a 30-year-old man with an eighth-grade

Civil No. 23-1038 (FAB)                                             16

education, who was unemployed at the time of his offenses.  Id.
Bruzón-Velázquez had a history of drug use.  Id.  The Court also
noted that Bruzón-Velázquez used a Glock pistol to shoot and kill
Dubique, and shortly after had boasted to his cohorts that he
"opened up his brains."  Id. at 21-22.  After summarizing the
parties' sentencing recommendations, the Court imposed a sentence
of life imprisonment for 17-442, to be served consecutively to a
sentence of 15-years for 17-632, which reflected the seriousness
of the offenses, promoted respect for the law, and protected the
public, while addressing the issues of deterrence and punishment.
Id. at 22.  Bruzón-Velázquez appealed.

On appeal, Bruzón-Velázquez claimed that he had established
a fair and just reason to withdraw his plea, and that the Court
had abused its discretion in denying his request.[3]  (Appellant's
Brief at 11-16.)  Bruzón-Velázquez claimed that he was rushed and
coerced into pleading guilty by the totality of the circumstances,
and faced "extreme coercion and family duress."  Id.  He also
challenged his life sentence.  On September 15, 2022, the First
Circuit Court of Appeals rejected both contentions.  United States
v. Bruzón-Velázquez, 49 F.4th 23, 26 (1st Cir. 2022).  The court
of appeals held that Bruzón-Velázquez's motions and his indication

---

[3] Petitioner's appeal counsel was the same as his trial counsel, attorney
Lizarríbar.

Civil No. 23-1038 (FAB)                                              17

of his desire to go to trial did not "negate the voluntariness of
his plea."  Id. at 30.  The court of appeals also held that "[a]s
a factual matter, the record does not support the claim that he
lacked adequate time to consider the plea offer."  Id.  In turn,
"as a legal matter, facing time pressure 'is common among criminal
defendants and hardly exceptional enough to evince an overbearing
of [a defendant's] will.'"  Id. (quoting United States v. Marrero-
Rivera, 124 F.3d 342, 350 (1st Cir. 1997)).  Nor did Bruzón-
Velázquez's "family duress" render his plea involuntary.  Id.
at 30-31.  There was simply no abuse of discretion in the district
Court's denial of Bruzón-Velázquez's motion to withdraw his guilty
plea.[4]  Id. at 31.  Because Bruzón-Velázquez did not request
*certiorari* his conviction became final fourteen days later.

Bruzón-Velázquez timely moved to vacate his conviction in
January 2023.  (Civil Docket No. 1.)  See Clay v. United States,
537 U.S. 522, 524 (2003).  In his motion, Bruzón-Velázquez reversed
course, now claiming that his attorney was ineffective because it
was his attorney herself who advised him to withdraw his guilty

---

[4] The First Circuit Court of Appeals also upheld the imposition of petitioner's
life sentence.  "[T]he district court adequately explained the considerations
particular to Bruzón-Velázquez that rendered the sentence appropriate,
including the fact that he, alone among his codefendants, repeatedly shot
Dubique and boasted about doing so.  Bruzón-Velázquez has not met his burden to
show that his sentence falls outside the 'universe of reasonable sentences.'"
Citing United States v. Rivera-González, 776 F.3d 45, 52 (1st Cir. 2015), United
States v. Bruzón-Velázquez, 49 F 4th 23, 33.

Civil No. 23-1038 (FAB)                                          18

plea and did not inform him of the consequences of this move. (Civil Docket No. 1, 1-1.)  In April 2023, still within a year of his conviction becoming final, he added a claim under United States v. Taylor, 596 U.S. 845 (2022).  (Civil Docket No. 3.)  Bruzón-Velázquez's contentions lack merit.

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).  Claims that do not allege constitutional or jurisdictional errors are properly brought under section 2255 only if the claimed error is a "fundamental defect which fundamentally results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Id.

Civil No. 23-1038 (FAB)                                                19

A motion under § 2255 is not a substitute for a direct appeal. Foster v. Chatman, 136 S. Ct. 1737, 1758 (2016).  As a result, "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."  Id. (citations omitted).  Moreover, "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal."  Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (quotation marks and citations omitted).  If a section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from judicial review unless petitioner can demonstrate both (1) cause for the procedural default and (2) actual prejudice resulting from the error asserted.  Id., United States v. Frady, 456 U.S. 152, 167-68 (1982).

**III. INEFFECTIVE ASSISTANCE OF COUNSEL**

To establish ineffective assistance of counsel, a defendant must show that:

1.   His attorney's performance was deficient, and that

2.   The deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To establish deficiency, a defendant must establish that counsel's performance "fell below an objective standard of

reasonableness under prevailing professional norms." Strickland 466 U.S. at 688.  Under Strickland counsel is presumed to have acted within the range of "reasonable professional assistance," and it is defendant who bears the burden of "overcoming the presumption that, under the circumstances, that challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.  To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  This assessment, however, "must be a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or successful defense.'"  Moreno-Espada v. United States, 666 F.3d 60, 64 (1st Cir. 2012) quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994).

A claim of ineffective assistance of counsel "requires a court to first assess whether 'counsel's representation fell below an objective standard of reasonableness.'"  Padilla v. Kentucky, 130 S.Ct. 1473, 1482 (2010).  Petitioner was obligated to show both that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted from it, Strickland, 466 U.S. at 687; see also López-Nieves v. United States, 917 F.2d

645, 648 (1st Cir. 1990), as to each particular instance for which he claims ineffective assistance of counsel.   Counsel's performance must be examined "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1992).   The "range of reasonable professional assistance" is quite wide.  See Strickland, 466 U.S. at 689.  Accordingly, the Supreme Court has stated that "judicial scrutiny of counsel's performance must be highly deferential." See Strickland, 466 U.S. at 689.  As recently reiterated by the First Circuit Court of Appeals, "[o]nly when counsel's strategy was 'so patently unreasonable that no competent attorney would have made it' may we hold such performance as deficient.  Review of counsel's performance must be deferential, and reasonableness must be considered in light of 'prevailing professional norms.'" Watson v. United States, 37 F.4th 22, 28 (1st Cir. 2022) (internal citations omitted).

Under Strickland petitioner is required to identify acts or omissions by counsel which need to be outside the wide range of professional competent assistance and the harm such actions caused.   Furthermore, "a defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong."  Moreno-Espada v. United States,

Civil No. 23-1038 (FAB)                                          22

666 F.3d 60,64 (1st Cir. 2012) (quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).

Accordingly, "[t]he requisite showing of prejudice requires more than postulating that counsel's 'errors had some conceivable effect on the outcome of the proceeding.'" Argencourt v. United States, 78 F.3d 14 at 16 (quoting Strickland, 466 U.S. at 693.) This "presents a high hurdle." Id. "Strickland places the burden on the defendant, not the [government], to show a reasonable probability that the result would have been different." Wong v. Belmontes, 558 U.S. 15, 27 (2009) (per curiam) (internal quotation marks omitted); See Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015). Under Strickland, "[a] reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012) (quoting González-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001)); See Strickland, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691; See Bobby v. Van Hook, 558 U.S. 4, 12–13 (2009) (per curiam). "In weighing the prejudicial effect of counsel's errors, [this Court] must consider the totality of the evidence before the judge or jury." Turner, 699 F.3d at 584. To show prejudice in the context of a

guilty plea, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Failure to satisfy one of the Strickland prongs is fatal; therefore, a court is free to tackle either prong first.  United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013).

## IV.  DISCUSSION

In his 2255 petition, Bruzón-Velázquez raises two challenges. First, that his counsel was ineffective in her advising petitioner to withdraw his guilty plea; second, that United States v. Taylor, 596 U.S. 845 (2002) applies to his case.  Both allegations lack merit.

### A.    Withdrawal of the guilty plea

Petitioner's allegation that his counsel was ineffective because she advised him to withdraw his guilty plea is a nonstarter.[5]  The Court has previously detailed what transpired in petitioner's criminal case, and the record is clear that at all times attorney Lizarríbar, in the presence of Bruzón-Velázquez,

---

[5] Curiously, after alleging to both the district court at sentencing and on appeal to the First Circuit Court of Appeals that the district court had abused its discretion in denying his withdrawal of his guilty plea, petitioner now, for the first time, frames his argument as one of ineffective assistance of counsel blaming his attorney for advising him to withdraw his guilty plea.

Civil No. 23-1038 (FAB)                                              24

informed the Court that it was defendant's request to withdraw his guilty plea.

As a matter of fact, petitioner refused even to meet with counsel and sent her a message via his girlfriend that he wished to withdraw his guilty plea.  (Criminal Docket No. 239.) There is not a scintilla of evidence proffered by Petitioner that his constant request to withdraw his guilty plea was upon advice of his counsel.

In his memorandum in support of his 2255 petition (Civil Docket No. 1-1) Bruzón-Velázquez alleges that his request to withdraw his guilty plea, four months after his change of plea hearing, was based on newly discovered evidence which would establish his innocence.[6]  There is not a trace in the record, however, of any new evidence being provided after the change of plea hearing, nor does petitioner explain what this supposed new evidence consist of.  This is nothing more than a self-serving argument made by defendant to see if the Court would accept it. Petitioner is out of luck.

Finally, Bruzón-Velázquez's claim that counsel failed to advise him of the repercussions of moving to withdraw his guilty

---

[6] The Court must ask which is it:  newly discovered evidence or was Bruzón-Velázquez coerced or induced by counsel to withdraw his guilty plea.  Petitioner seems to be arguing everything and anything he can think of without regards to the record and the facts of his criminal case.

Civil No. 23-1038 (FAB)                                                    25

plea is premised on his self-serving and unsupported allegation that counsel advised him to withdraw his guilty plea in the first place.  (Civil Docket No. 1-1 at 24.) ("When attorney Lizarríbar advised the petitioner of the newly discovered evidence and to withdraw the plea of guilty, under the claim of innocence, that counsel did an act of misrepresentation that as a consequence caused to have the presentence probation office to subtract the three points for acceptance of responsibility; exposing the petitioner to a life sentence guideline, which was eventually the result.")  It is here where petitioner's 2255 Petition starts to be understood.  Bruzón-Velázquez's does not wish to serve the properly imposed life sentence.

        This final attempt suffers the same fate as the previous ones; none is able to meet the Strickland standard.  Petitioner has failed to establish a valid claim of ineffective assistance of counsel, and the allegations are **DENIED**.

        B.    **Applicability of United States v. Taylor**

        In United States v. Taylor, 596 U.S. 845 (2022),[7] the Supreme Court held that attempted Hobbs Act robbery, in violation

---

[7] The Supreme Court's holding in Taylor establishes that an attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause of statutory definition of crime of violence, as a predicate for felony conviction and enhanced sentence for using a firearm in furtherance of a crime of violence. United States v. Taylor, U.S. 845 (2022).  The facts surrounding petitioner's conviction and sentence greatly differ form those in Taylor.  There was no attempted robbery; here there was an actual carjacking and kidnapping which resulted in the death of an innocent victim.

Civil No. 23-1038 (FAB)                                                    26

of Title 18, United States Code, section 1951(a), is not a "crime of violence," as that term is defined in 18 U.S.C. § 924(c)(3)(A) because one may imagine an attempt offense in which the defendant did not actually use or threaten force. Taylor at 851-852. The Court set forth a hypothetical, in which a person named "Adam" planned to rob a business, researched its security measures and business practices, drafted a demand note, and bought supplies and planned his escape, all to be arrested as he crossed the threshold into the store. Id. Based on the possibility of such a prosecution for attempted Hobbs Act robbery—one that did not require actual or threatened force—the Court held that no such offense qualifies as a "crime of violence." Id.

Bruzón-Velázquez alleges that in light of Taylor, a completed carjacking whether it results in death or not does not qualify as a crime of violence and cannot therefore serve as predicate offense for his 924(c) conviction.

Bruzón-Velázquez pled guilty and was convicted of carrying, brandishing, and discharging a firearm during and in relation to two distinct predicates one of which caused the death of a victim through the use of a firearm, carjacking and kidnapping. (Criminal Docket No. 60.) The charges contemplated in Title 18, United States Code, Section 2119(3), carjacking, and Title 18, United States Code, Section 1201(a), kidnapping

Civil No. 23-1038 (FAB)                                                    27

resulting in death remain crimes of violence after Taylor.  See

United States v. Cruz-Rivera, 904 F.3d 63,66 (1st Cir. 2018)

(carjacking); In re Hall, 979 F.3d 339, 346 (5th Cir. 2020)

(capital kidnapping).

          Furthermore, even if kidnapping resulting in death were

no longer a crime of violence, Bruzón-Velázquez's completed

carjacking would suffice.  "Taylor did not undermine Cruz-Rivera's

holding that a completed carjacking is a crime of violence."

Velázquez-Aponte v. United States, 2025 WL 1503812, slip opinion,

(D.P.R. 2025).

          The First Circuit Court of Appeals decided a case in

which a defendant relied on United States v. Davis, 139 S. Ct.

2319 (2019) and related precedent to challenge his Title 18, United

States Code, section 924(c) conviction for brandishing a firearm

during the commission of conspiracy (18 U.S.C. § 371) and bank

robbery (18 U.S.C. § 2113(a) and (d)) offenses.  See United States

v. Rivera-Rivera, No. 19-2052 (1st Cir. Aug. 22, 2022.)  In that

case, the First Circuit Court of Appeals held that "standing alone,

the inclusion in the operative indictment of a non-qualifying

predicate offense, in addition to a qualifying predicate offense,

generally does not require vacatur of a § 924(c) conviction."

United States v. Rivera-Rivera, No. 19-2052 (1st Cir. Aug. 22,

2022) (quoting United States v. Serrano-Delgado, 29 F.4th 16, 27-28

Civil No. 23-1038 (FAB)                                              28

(1st Cir. 2022)); cf. United States v. Farmer, 988 F.3d 55, 64 (1st Cir. 2021) ("[E]ven if there had been clear error, [defendant's] challenge still fails because he cannot show prejudice.  One crime of violence suffices to satisfy section 924(c).")  Because the operative Indictment included a qualifying predicate offense for which Bruzón-Velázquez pled guilty, the section 924(j) conviction need not be vacated.  Having pled guilty to at least one valid predicate offense, Bruzón-Velázquez cannot show that his conviction should be vacated.  Petitioner's motion to amend his original motion pursuant to Taylor, (Docket No. 3) is **DENIED.**

Before this court is nothing more than a cold-blooded killer who lacks remorse and empathy for his victims, and their families.  Petitioner gloated on that he had murdered an individual by blowing his brains out.  Petitioner has raised frivolous claims for which one can only conclude is his displeasure with his life sentence.  Suffice it to say Bruzón-Velázquez must live with the consequences of his actions.  Argenis Ercides Bruzón-Velázquez's Petition for 2255 relief, (Docket No. 1) is **DENIED.**

## Evidentiary Hearing

As part of his 2255 petition, Bruzón-Velázquez requested an evidentiary hearing.  He has failed to meet the requirements for such a hearing to be granted.

Civil No. 23-1038 (FAB)                                         29

For petitioner to prosper in his request, he must be able to demonstrate to the Court by a preponderance of the evidence, not only an entitlement to the 2255 petition for relief, but also entitlement to an evidentiary hearing, David v. United States, 134 F.3d 470, 477-478 (1st Cir. 1998); Reyes v. United States, 421 F.Supp. 2d 426, 430 (D.P.R. 2006).   Inasmuch as petitioner has failed in his burden as to his 2255 petition, he has failed as well in the request for an evidentiary hearing.   Accordingly, petitioner's request for an evidentiary hearing (Civil Docket No. 1-1) is **DENIED.**

## V.   CONCLUSION

For the reasons stated, petitioner Argenis Ercides Bruzón-Velázquez's Motion under 28 U.S.C. § 2255 (Civil Docket No. 1) is **DENIED**.   This case is **DISMISSED with prejudice**.   Judgment shall be entered accordingly.

## VI.   CERTIFICATE OF APPEALABILTY

No certificate of appealability shall be issued in the event that petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. 2253(c)(2).

Civil No. 23-1038 (FAB)                                                    30

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 24, 2026.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        SENIOR UNITED STATES DISTRICT JUDGE